UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

VOSS OF NORWAY, ASA;
VOSS PRODUCTION, AS;                                    Case No. 07 cv 7649
ENERGY GROUP, AS; and
G ENERGY, INC.,

                                                        *ANSWER AND*
                              *Plaintiffs,*             *COUNTERCLAIMS*

            -against-

REVTECH, INC.,

                    *Defendant and Counterclaim*
                    *Plaintiff,*

                    -against-

SOUTHERN WINE & SPIRITS OF AMERICA,
REPUBLIC NATIONAL DISTRIBUTING
COMPANY, STARWOOD HOTELS AND
RESORTS WORLDWIDE, INC., FOUR
SEASON'S HOTELS, ALABAMA CROWN,
ALLAN S. GOODMAN, INC., TRANSATLANTIC
WINE AND SPIRITS, CLASSIC WINE IMPORTS,
J. LEWIS COOPER, J&P WHOLESALE
IMPORTS, R&R MARKETING, MANHATTAN
BEER DISTRIBUTORS, BIG BLUE
DISTRIBUTORS, INC., CAVALLARO
SPECIALTY FOODS, INC., EMPIRE
DISTRIBUTORS OF NORTH CAROLINA,
GALAXY WINE COMPANY LLC, ORIGLIO
BEVERAGE, WILSBACH DISTRIBUTORS, R.S.
LIPMAN CO., GLAZER'S WHOLESALE
DISTRIBUTOR, NICHOLAS & CO. and NOBLE
WINES,

                    *Additional Counterclaim*
                    *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Defendant RevTech, Inc. ("RevTech"), by its attorneys, Heller, Horowitz & Feit, P.C., as and for its Answer to the Complaint of plaintiffs Voss of Norway, ASA, Voss Production, AS, Energy Group, AS and G Energy, Inc., and its Counterclaims as against plaintiffs and additional counterclaim defendants Southern Wine & Spirits of America, Republic National Distributing Company, Starwood Hotels and Resorts Worldwide, Inc., Four Season's Hotels, Alabama Crown, Allan S. Goodman, Inc., Transatlantic Wine and Spirits, Classic Wine Imports, J. Lewis Cooper, J&P Wholesale Imports, R&R Marketing, Manhattan Beer Distributors, Big Blue Distributors, Inc., Cavallaro Specialty Foods, Inc., Empire Distributors of North Carolina, Galaxy Wine Company LLC, Origlio Beverage, Wilsbach Distributors, R.S. Lipman Co., Glazer's Wholesale Distributor, Nicholas & Co. and Noble Wines (collectively, the "Voss Product Distributers"), alleges as follows:

1.      Denies the allegations in paragraph "1" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999.

2.      Denies the allegations in paragraph "2" of the Complaint except denies knowledge or information sufficient to form a belief as to Voss' expansion and/or upgrade plans.

3.      Denies the allegations in paragraph "3" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999.

4.      Denies the allegations in paragraph "4" of the Complaint except admits that Defendant sent Voss a "Notice of Termination" of the Agreements on July 5, 2007.

5.      Denies the allegations in paragraph "5" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999.

6.      Denies the allegations in paragraph "6" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999 and alleges that the Agreements were properly terminated effective July 25, 2007.

7.      Denies the allegations in paragraph "7" of the Complaint except alleges that, since Voss no longer has any rights under the Agreements, Defendant has demanded, *inter alia*, that (i) Voss immediately cease and desist from any use of the Licensed Process, the Licensed Patent Rights, the Licensed Know-How and the Ink on any of its products; (ii) Voss immediately cease and desist from any use of the Machines (as defined in the License Agreement) until such time as RevTech (a) has been given access to the Site(s) or any location where a Machine is located in or to verify that such machines do not perform the Licensed Process or use the Licensed Patent Rights, the Licensed Know-How or the Ink or otherwise manufacture the Licensed Products; and (b) had been given immediate access to the Machines for refitting; (iii) Voss immediately return all materials incorporating (a) the Licensed Patent Rights, the Licensed Know-How, the Licensed Marks and any other intellectual property rights of RevTech or its Affiliates or (b) RevTech Confidential Information; (iv) RevTech be provided with the net book value of the lamp systems that were used in connection with the Licensed Process so that RevTech can decide whether to elect to exercise it option to acquire such lamp systems; and (v) Voss cease and desist from any use of the Licensed Marks.

8.      Denies the allegations in paragraph "8" of the Complaint except alleges that Voss disputes that it has breached the Agreements and that termination has properly occurred.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "9" of the Complaint.

10.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "10" of the Complaint.

11.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "11" of the Complaint.

12.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "12" of the Complaint.

13.     Admits the allegations in paragraph "13" of the Complaint.

14.     Admits the allegations in paragraph "14" of the Complaint.

15.     Admits the allegations in paragraph "15" of the Complaint.

16.     Admits the allegations in paragraph "16" of the Complaint.

17.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "17" of the Complaint.

18.     Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "18" of the Complaint.

19.     Admits the allegations in paragraph "19" of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegation that "Defendant's UV technology is currently Voss' sole source for bottle labeling on its glass bottled products."

20.     Denies the allegations in paragraph "20" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999, refers to the Defendant's patents

(copies of which are annexed hereto) and admits that the machine was fitted according to Defendant's specifications.

21.    Admits the allegations in paragraph "21" of the Complaint.

22.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph "22" of the Complaint.

23.    Denies the allegations in paragraph "23" of the Complaint.

24.    Denies the allegations in paragraph "24" of the Complaint except denies knowledge or information sufficient to form a belief as to the truth of the allegations regarding Kammann's business or Voss' selection of "Marabu" as the supplier of its decorating solution.

25.    Denies the allegations in paragraph "25" of the Complaint except denies knowledge or information sufficient to form a belief as to alleged advice Spacio AS has given to Voss.

26.    Denies the allegations in paragraph "26" of the Complaint except alleges that Defendant has accused Voss of breaching the Agreements because Voss has breached the Agreements.

27.    Denies the allegations in paragraph "27" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999.

28.    Denies the allegations in paragraph "28" of the Complaint except refers to the Notice of Termination.

29.    Denies the allegations in paragraph "29" of the Complaint except refers to the July 6, 2007 letter.

30.    Denies the allegations in paragraph "30" of the Complaint except alleges that Defendant received a letter from Voss dated July 18, 2007 and that such letter did not cure and should not be construed to have cured Voss' breaches of the Agreements.

31.    Denies the allegations in paragraph "31" of the Complaint except admits that Defendant's counsel sent Voss a letter on August 3, 2007 and refers to this letter.

32.    Denies the allegations in paragraph "32" of the Complaint.

33.    Denies the allegations in paragraph "33" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999.

34.    Denies the allegations in paragraph "34" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999.

35.    Denies the allegations in paragraph "35" of the Complaint except refers to the Agreements at issue in this action dated December 17, 1999.

36.    Denies the allegations in paragraph "36" of the Complaint.

37.    Denies the allegations in paragraph "37" of the Complaint.

38.    Responds to the allegations in paragraph "38" of the Complaint by repeating and realleging each and every allegation in the responses to paragraphs "1" through "37" of the Complaint with the same force and effect as thought more fully set forth herein.

39.    Denies the allegations in paragraph "39" of the Complaint except admits that the Agreements were terminated effective July 25, 2007.

40.    Denies the allegations in paragraph "40" of the Complaint.

41.    Denies the allegations in paragraph "41" of the Complaint.

42.    Admits the allegations in paragraph "42" of the Complaint.

6

43.     Denies the allegations in paragraph "43" of the Complaint except alleges that Voss is seeking a declaration that the Agreements have not been breached or properly terminated.

44.     Denies the allegations in paragraph "44" of the Complaint except alleges that Voss is seeking a declaration that the Defendant's licensed process, licensed patent rights, licensed know now and licensed ink does not cover the Kammann machines or Marabu products, process, know-how, or new ink.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

45.     Voss has breached the the Agreements at issue in this action dated December 17, 1999.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

46.     The Agreements at issue in this action dated December 17, 1999 terminated effective July 25, 2007 when Voss failed to timely cure its breaches thereof.

## THE COUNTERCLAIMS

### Jurisdiction

47.    This Court has jurisdiction over the Additional Counterclaim Defendants pursuant to 15 U.S.C. § 1116; 35 U.S.C. §§ 1 *et. seq.*; and 28 U.S.C. § 1331.

### The Parties

48.    RevTech developed and is the sole owner of certain processes, confidential information and "know-how" to decorate glass containers using radiation curable "one way" beverage inks.  In less technical terms, RevTech has developed the process which permits painting a label onto the actual surface of a container (like the painted labels on a Rolling Rock or Corona beverage bottle) rather than first printing the label onto paper or plastic and thereafter affixing the paper or plastic to the container (like the labels that exist on Plastic Coca-Cola or Poland Spring water bottles).  Although other companies have tried to imitate the processes and know-how developed and licensed by RevTech, none have managed to successfully combine all of the processes and know-how in order to decorate glass containers in the manner developed by RevTech.

49.    RevTech owns 100% of Deco Patents, Inc. ("Deco") who (a) is the owner of all right, title and interest in (i) United States Patent No. 6,093,455 entitled "Method and compositions for decorating glass" issued on July 25, 2000 (the "Decorating Glass Patent"), and which is valid and subsisting (A true and correct copy of the Decorating Glass Patent is annexed hereto as Exhhibit A); and (ii) United States Patent No. 6,136,382 entitled "Method and compositions for decorating vitreous articles with radiation curable inks having improved adhesion and durability" issued on October 24, 2000 (the "Curing Patent"), and which is valid

adhesion and durability" issued on October 24, 2000 (the "Curing Patent"), and which is valid

and subsisting (A true and correct copy of the Curing Patent is annexed hereto as Exhibit B); and

(b) for all purposes the trademark "EG" (the "Mark"), which is duly registerd in the Principal

Register of the United States Patent and Trademark Office (USTM 2453376). RevTech has all

rights to license, enforce and exploit Deco's patents and trademarks.

       50.    Voss is a Norwegian purified water bottling company that claims that it

bottles water that has been shielded for centuries under ice and rock in the untouched wilderness

of Central Norway.  Over the last few years, Voss' cylindrical package has quickly developed a

superior image and achieved significant market share in the ultra-premium bottled water market.

It is because of the processes, confidential information and know-how provided by RevTech to

Voss (well-before Voss started manufacturing, marketing and selling its products), that Voss has

been able to decorate their glass containers and develop the image obtained in the ultra-premium

water market.

       51.    Upon information and belief, Voss Production, AS, Energy Group, AS and

G Energy, Inc. are Voss affiliates.

       52.    Upon information and belief, the following additional counterclaim

defendants are each distributors of Voss products (the "Voss Product Distributors"), which

products have been or are being manufactured, distributed and/or sold, *inter alia*, in violation of

RevTech's proprietary and intellectual property rights including, but not limited to, the

Decorating Glass Patent and the Curing Patent and the Mark:

                    Southern Wine & Spirits of America
                    1600 N.W. 163rd Street
                    Miami, FL 33169

Republic National Distributing Company
One National Drive
Atlanta, Georgia 30336
Starwood Hotels and Resorts Worldwide, Inc.
1111 Westchester Avenue
White Plains, NY 10604

Four Season's Hotels
1165 Leslie Street
Toronto, Ontario
Canada M3C 2K8

Alabama Crown
421 Industrial lane
Birmingham, Alabama 35219

Allan S. Goodman, Inc.
180 Goodwin Street
East Hartford, ct. 06108

Transatlantic Wine and Spirits
1605 NW 159th Street
Miami, Florida 33169

Classic Wine imports
975 University Avenue
Norwood MA 02062

J. Lewis Cooper
3101 Gulley
Dearborne, MI 48124

J&P Wholesale Imports
8400 South Jones Blvd.
Las Vegas, NV 89139

R&R Marketing
10 Patton Drive
West Caldwell, NJ 07006

Manhattan Beer Distributors
400 Walnut Avenue
Bronx, NY 10454

Big Blue Distributors, Inc.
380 Union Avenue
Brooklyn, NY 11211

Cavallaro Specialty Foods, Inc.
5881 Court Street
Syracuse, NY 13206

Empire distributors of North Carolina
5417 Wyoming Avenue
Charlotte, North Carolina 20273

Galaxy Wine Company LLC
3481 NW Yeon Avenue
Portland, OR 97210

Origlio Beverage
3000 Meeting House Road
Philadelphia, PA 19154

Wilsbach Distributors
905 Katie Ct.
Harrisburg, PA 17109

R.S. Lipman Co.
PO Box 280300
Nashville, TN 37228

Glazer's Wholesale Distributor
2001 Diplomat Drive
Farmers Branch, TX 75234

Nicholas & Co.
5520 Harold Gatty Drive
Salt Lake City, UT 84145

Noble Wines
818 Dakota Street
Seattle, Washington 98108

### Summary of the Counterclaims

53.    The counterclaims arise out of the breach by Plaintiffs of a number of provisions in a certain license agreement entered into by the parties in December, 1999. Even though this license agreement was properly terminated by RevTech effective July 25, 2007, Voss has, *inter alia*, failed and refused (i) to cease and desist from conducting itself as though the license agreement is still in full force or effect; or (ii) to comply with section 10.11 of the license agreement (which, among other things, provides that "all materials incorporating the Licensed Patent Rights, Licensed know-How, the Licensed Marks and any other intellectual property rights of RevTech or its Affiliates or RevTech Confidential Information to RevTech" shall be returned to RevTech). Put another way, although Voss no longer has any right to use the Know-How, Licensed Marks, Licensed Patent Rights, Licensed Products and/or Licensed Process provided by RevTech to Voss, it nevertheless continues to do so in outright violation of the terms of the contract to which Voss agreed when RevTech helped put Voss "on the map" in 1999.

### Background

54.    On or about December 17, 1999, well-before Voss appeared on the ultra-premium water market scene, Voss and RevTech entered into a fifty (50) page license agreement (the "License Agreement") wherein, among other things, RevTech granted to Voss the non-exclusive license, subject to and limited by the terms and conditions of the License Agreement, (i) to use certain of RevTech's processes on machines purchased from equipment supplier(s) approved in writing by RevTech and retrofitted by Voss to perform RevTech's processes and (ii) to make, sell and use products produced utilizing RevTech's processes. Among the specific processes and know-how licensed by Voss from RevTech were the following: (i) screen-printing

on glass containers in general (regardless of the application machine used); (ii) screen-printing with Ultra-Violet inks, regardless of the application machine that is used, and (iii) use of containers that have an ink adhesion promoter that is applied through a pre-treatment of the container prior to printing.  The License Agreement further provided that Voss was granted the non-exclusive right to use the Licensed Patent Rights to make, use and sell the Licensed Products.

55.     In 1999 Voss was a brand new company and had no screen printing capability or knowledge.  RevTech sent personnel to Voss to train Voss employees in using the RevTech processes including, but not limited to, (i) how to screen print, (ii) how to screen print using UV ink and (iii) how to use containers that have an ink adhesion promoter that is applied through a pre-treatment of the container prior to printing.  At the time, these processes were taught to Voss by RevTech and constituted exclusive know-how of RevTech.

56.     Each of the individuals sent to Voss had more than thirty years of experience in screen-printing, using different kinds of ink on many different kinds of containers with many types of machines.  It took weeks of training to make Voss operational and many months to bring Voss to a modest level of self sufficiency.  Many "tricks of the trade" known only to RevTech were conveyed to Voss and it has taken Voss many years to further perfect their screen-printing talents accomplished through the efforts of RevTech.

57.     As a result of the technology, knowledge and "Know How" imparted on Voss by RevTech, Voss has saved millions of dollars it would have otherwise had to expend when decorating its bottles.

13

58.    Now that Voss has grown into a multi-million dollar company (with the help of RevTech's confidential processes and know-how), it has unilaterally decided that it can go around RevTech's back and no longer pay for the confidential processes and know-how provided to Voss in connection with the License Agreement. Voss has decided, in blatant violation of the specific terms and conditions in the License Agreement it entered into when it needed RevTech to teach it the processes it currently uses and will continue to use for its containers, that it can ignore the provisions of the License Agreement and, more specifically, can ignore the default provisions and the restrictions contained therein to be imposed in the event of a default and/or termination of the License Agreement.

59.    To make matters worse, Voss also maliciously harmed RevTech when it deliberately disclosed to Kammann, the largest manufacturer of screen printing machines in the world, the contents of a confidential communication RevTech had with Voss. Specifically, on or about June 14, 2007, after RevTech commented on a new machine about to be sold to Voss by Kammann. Following an inspection made by RevTech at Kammann's request at the Kammann facilities (with whom RevTech had been actively seeking a working relationship), Voss "stabbed RevTech in the back" by sharing with Kammann the issues raised by RevTech about the Kammann machine. Although RevTech was ready to present Kammann with its ideas on how to correct these issues, Voss essentially "tattled" on RevTech. Kammann then accused RevTech of attempting to "jeopardize" the sale of its new machine to Voss, demanded that RevTech disclose to it in writing exactly what it told Voss about the new machine and, thereafter, terminated any further communications with RevTech.

60.     Since June 15, 2007 (the dated of the Kammann letter to RevTech),

Kammann has refused to acknowledge or respond to any RevTech attempts to contact it.

Accordingly, as a direct result of Voss' conduct, RevTech has lost millions of dollars in business.

### The Licensed Processes -- Screen Printing

61.     Screen-printing of containers is the act of pushing ink through specifically

placed holes in a material (screen) onto a three dimensional container such that the identical

design and decoration will appear on every container subjected to this process.  While this can be

done with one color or many colors, each color must be applied with a separate screen in the

same order each time. The Process can be performed semi-automatically (manually passing

containers one at a time through single color screen printing machines until the desired number

of colors for the decoration are applied), or automatically (sending as many as 150 containers a

minute or more through a machine with multiple screen-printing stations).

62.     Regardless of the machinery, the process of applying the inks to the

container is quite complex. There are many variables involved, which include the proper

preparation of the screen, the number of coatings used to create the screen, the type of screen, the

size of the holes in the screen, the placement of the screen, the movement of the screen, the type

of squeegee used to push the ink through the screen, the condition of the squeegee, the angle of

the squeegee, the pressure applied to each area of the length of the squeegee through a complex

gear system, the movement of the container, the placement of the container, the quality of the

container, the shape of the container, the surface condition of the container, and, most

importantly, the knowledge of the people involved in performing the task as it relates to the

above items as well as many other items.

63.    The process becomes even more complex when multiple colors are involved.  Each color must be placed on the container in precise relationship to the other colors, which is called "registration." The impact of each color on every other color must be considered and controlled so that the desired overall impression on the container is achieved.  Problems that can occur (in addition to placement) include, but are not limited to, bleeding of one ink into another, poor opacity, pin holes in the ink, variations in the shade of a color, etc.  This requires the decorator to have knowledge of the ink and its many performance issues.

### The Ink to be Applied to the Container

64.    The ink applied to the container must be dried for the decoration to become permanent.  This has generally been done with high levels of heat through a lehr oven with ceramic based inks.  However, Revtech has patents for using ultra-violet light to cure each color after it is applied, rather than place the fully decorated container in a high temperature oven for close to an hour to dry.  UV lamp systems are available for semi-automatic printing or the lamps are placed on automatic decorating equipment with one lamp installed after each color printing station.

65.    Revtech has two processes for curing.  Its first older process required a smaller low temperature oven to give the ink sufficient strength for commercial use.  Its current process requires the alteration of the surface chemistry of the container to obtain sufficient adhesion.  This is accomplished by pre-treating the container with a coupling agent that creates a chemical bond between the glass surface and the ink. The preferred coupling agent will create a hydrogen bond.

16

66.    UV curing has been used for many years on plastic containers and paper products. However, obtaining acceptable adhesion to glass containers with UV inks had been an enduring problem. RevTech solved this problem. This was a major breakthrough by RevTech because the advantages UV inks provide include, but are not limited to, the speed of obtaining a finished product, the elimination of the space for a lehr oven, the ability to obtain colors that are environmentally sound, the reduction of complexity in identifying colors that might otherwise change when exposed to high heat and the reduction of stress on the strength of the container by elimination of the oven.

67.    The use of UV ink involves many additional variables because of the different chemistry of the ink and the lamps that are necessary to cure the ink; and increases the complexity of the variables inherent in any screen-printing ink. New variables include handling of UV inks, the necessary tests and procedures for obtaining an acceptable product, troubleshooting of the many problems that can occur, safety and control procedures, positioning of the lamps, power and nanometer range for curing, shielding of the lamps in relation to the screens, operation of the lamps, maintenance of the lamps.

### The Pre-Treatment of the Container

68.    Revtech's preferred mechanism for creating a container that is optimum for UV screen printing is to apply a pre-treatment to the container. The objective is to create a chemical bonding medium for applying inks to the container and achieving a stronger adhesion of the ink. This enhances commercial product performance. The preference is to obtain a hydrogen bond, as explained in the patent, for this process. The pre-treatment can be applied through a wide variety of methods. The preferred method for RevTech is a spray application.

17

### **"Know-How" and "Licensed Know-How"**

69.     "Know-How" and "Licensed Know-How" are defined in §§ 1.02 (l) and

(k) of the License Agreement as follows:

> 'Know-How' shall mean all factual knowledge and proprietary
> information held as trade secrets, whether or not capable of precise
> separate description, but that alone or when accumulated gives to
> the one acquiring it an ability to study, test, produce, manufacture,
> or market something that one otherwise would not have known
> how to study, test, produce, manufacture, or market in the same or
> substantially the same way.

> 'Licensed Know-How' means all Know-How in the Field that is in
> the possession or control of RevTech or its Affiliates as of the
> Agreement Date.

"Field" is defined as "the field of decorating three-dimensional glass containers with Ink and the

resulting decorated end products."

70.     In order to protect RevTech and the "Know How" imparted upon Voss

with respect to the screen printing process, the parties agreed to the following "restriction" in §

2.02 of the License Agreement:

> … It is understood between the parties that with respect to the
> Licensed Process, the Licensed Patent Rights and the Licensed
> Know-How no rights other than those specifically granted in
> Section 2.01 are granted to Customer. ***Without limitation of the
> foregoing, Customer shall not*** (and any attempt to do any of the
> following shall constitute a material breach of this Agreement):
>
>                         *   *   *
>
> (h) use any Know-How in the possession or control of RevTech or
> its Affiliates in connection with the decoration of glass containers
> or packages (other than the use of the Licensed Know-How in
> connection with the practice of the Licensed Process, the Licensed
> Patent Rights and the Licensed Know-How upon the terms and
> subject to the conditions of this Agreement) …

Emphasis supplied.

71.     Revtech also provided Voss with "Know-How" to create a screen printed

product with any type of ink (whether it be UV or ceramic or any other type of organic ink) so

that the "ink" can be applied through screen printing (regardless of how it reached its ultimate

cure, *i.e.*, whether by heat or pre-treatment). This included all the necessary application

information, equipment specifics, and physical pre-treatment products required. Once a container

obtains a surface with the ability to create a proper chemical bond, many different inks and labels

can be applied to the container.

72.     All the information involved in the complex process explained above is

trade secret of Revtech and was not known by any other participant in the ink industry at the time

the parties entered into the License Agreement.

### The License Agreement

73.     As stated above, in December 1999 the parties entered into the License

Agreement. In addition to the definition of "Know-How" and "Licensed Know-How", the

License Agreement provides, in relevant part, the following:

> 1.02    Definitions. The following capitalized terms as used in this
> Agreement and not defined elsewhere in this Agreement shall have
> the meanings set forth below:
>
> (a)     "Ink" shall mean RevTech's proprietary radiation curable
> 'one-way' beverage inks described in Schedule 1.02(i) hereto.[1]
>
> (m)     "Licensed Marks" shall mean the trademark
> "ENVIROGLUV™" and the other trademarks set forth on Schedule
> 1.02(m) and any simulations, contractions or variations thereof,

---

[1]     Schedule 1.02(i) describes the One-Way Ink as "Acid functional monomer/oligomer base
– clear" and "Acid functional monomer/oligomer base – pigmented."

whether registered, unregistered, under common law or otherwise or any such other trademarks as may be set forth on an annex to such schedule that is signed by a Responsible Officer of RevTech and Customer, all in the form approved by RevTech for use by Customer hereunder subject to the terms and conditions of Article 3.

(n)    "Licensed Patent Rights" means the legal rights throughout the Territory conferred upon RevTech or its Affiliates with respect to the patents and patent applications set forth in Schedules 1.02(n) hereto, including, without limitation, any divisions, continuations, continuations-in-part, substitute applications, patents of additions, reissues or re-examinations thereof.

(o)    "Licensed Process" means (i) any process in the Field, the practice of which would, except for this Agreement, infringe the Licensed Patent Rights, (ii) any process in the Field, the practice of which utilizes Licensed Know-How and (iii) all improvements to the processes identified in the immediately preceding subclauses (i) and (ii) (but not including any improvements involving the use of ink other than the Ink), whether developed by RevTech, by Customer, jointly by RevTech and Customer or otherwise (such improvements shall be referred to herein as "Improvements").

(p)    "Licensed Products" shall mean the Products (i) that are decorated by Customer using the Licensed Process, the Licensed Patent Rights or the Licensed Know-How and in each case the Ink that are to be used solely for the Purpose and (ii) the making, selling or using of which would, except for this Agreement, infringe any legal rights conferred upon RevTech or its Affiliates, including, but not limited to, legal rights conferred by any Licensed Patent Rights or any Licensed Know-How in connection with the Licensed Process.

(q)    "Machine(s)" shall mean (i) the machines set forth on Schedule 1.02(q) hereto that are retrofitted to perform the Licensed Process and/or that are purchased to perform the Licensed Process, each of which incorporates a Meter, and (ii) any other machines (A) sold to Customer or (B) retrofitted by Customer or for Customer by an equipment supplier approved by RevTech, in its sole and absolute discretion, that performs the Licensed Process and incorporates a Meter, which machine shall be set forth in an annex to Schedule 1.02(q) hereto.

74.     Sections 2.01 and 2.02 of the License Agreement provide, in relevant part,

as follows:

2.01 <u>Scope</u>. RevTech hereby grants to Customer, and Customer hereby accepts from RevTech, upon the terms and conditions specified herein, including the royalties to be paid to RevTech by Customer pursuant to <u>Section 6.01(b)</u>, a non-exclusive, non-transferable, non-sublicensable right and license to practice the Licensed Process, the Licensed Patent Rights and the Licensed Know-How solely to make, use and sell Licensed Products in the Territory on the Machine(s) at the Site(s) during the Technology License Term.

2.02 <u>Restrictions</u>. The license rights granted by <u>Section 2.01</u> are limited to those specifically stated therein. It is understood between the parties that with respect to the Licensed Process, the Licensed Patent Rights and the Licensed Know-How no rights other than those specifically granted in <u>Section 2.01</u> are granted to Customer. Without limitation of the foregoing, Customer shall not (and any attempt to do any of the following shall constitute a material breach of this Agreement):

*     *     *

(b) manufacture, sell or transfer the Ink or use any other ink on the Machines or in connection with the Licensed Process, except for ceramic units;

(c) practice the Licensed Patent Rights, the Licensed Know-How or the Licensed Process in the decoration of any other product, container or package other than the Licensed Products;

(d) practice the Licensed Patent Rights, the Licensed Know-How or the Licensed Process to make the Licensed Products at places or locations other than the Sites;

(e) practice the Licensed Patent Rights, the Licensed Know-How or the Licensed Process to make the Licensed Products using machines or equipment other than the Machines or use the Machines to decorate glass containers, packages or other products using a decoration process other than the Licensed Process;

*     *     *

21

(h) use any Know-How in the possession or control of RevTech or its Affiliates in connection with the decoration of glass containers or packages (other than the use of the Licensed Know-How in connection with the practice of the Licensed Process, the Licensed Patent Rights and the Licensed Know-How upon the terms and subject to the conditions of this Agreement)... .

75.    Sections 11.01 and 11.02 of the License Agreement further provide, in relevant part, that

(a) Customer understands and agrees that (i) all information and documentation, whether oral, written or otherwise, that RevTech or any equipment supplier or any agent, representative, director, officer or employee of RevTech or its Affiliates or any equipment supplier furnishes to Customer or any of Customer's Affiliates or to which Customer or its Affiliates gain access with respect to the Field, the Licensed Process, the Licensed Patent Rights, the Licensed Know-How, the Licensed Marks, the Ink, any of RevTech's or its Affiliates' proprietary technology, RevTech's or its Affiliates' business or RevTech's or its Affiliates' customers or suppliers, whether before or after the Agreement Date, including, without limitation, information learned during the Technology License Term through use of the Licensed Process, the Licensed Patent Rights, the Licensed Know-How or the Ink or during facility tours and during demonstrations of the Ink, RevTech's or its Affiliates' technology or equipment and process capabilities and (ii) the terms of this Agreement ((i) and (ii) collectively, the "RevTech Confidential Information") shall not be used in any way detrimental to RevTech or its Affiliates, shall be kept confidential by Customer and shall not, without RevTech's prior written consent, (A) be disclosed by Customer to any Person other than to Customer's employees on a need-to-know basis or (B) be used by Customer other than for the purpose of performing its obligations under this Agreement. ... The term "RevTech Confidential Information" does not include information that Customer can demonstrate (x) is or becomes generally available to the public other than as a result of a disclosure by Customer, (y) was in Customer's possession prior to the disclosure to Customer by RevTech or any agent, representative, director, officer or employee of RevTech or its Affiliates or (z) becomes available to Customer on a non-confidential basis from a source other than RevTech or

22

any agent, representative, director, officer or employee of RevTech; provided, however, that such source, insofar as is known to Customer after due inquiry, is not prohibited from transmitting the information to Customer by a contractual, legal, fiduciary or other obligation.

Customer hereby acknowledges that the RevTech Confidential Information (a) is a trade secret of RevTech or its Affiliates and as such is protected by law; (b) is very valuable to RevTech and its Affiliates; and (c) must be carefully and continuously controlled. Customer agrees to use the highest standard of diligence to ensure the confidentiality of the RevTech Confidential Information and shall prohibit any unauthorized access to, use or duplication of the RevTech Confidential Information.  Customer agrees to keep all documentation relating to the RevTech Confidential Information in a secure place that is as secure as Customer provides for its most confidential materials of a similar nature.  Customer shall not cause, permit or allow the RevTech Confidential Information to be copied, duplicated, transcribed, reverse engineered, revealed to or used by any other Person except as may be approved by RevTech. Customer agrees to notify RevTech immediately of the unauthorized possession, use or knowledge or attempt thereof of the RevTech Confidential Information.  Customer shall promptly furnish RevTech with full details of such possession, use or knowledge or attempt thereof, use reasonable efforts to assist RevTech in investigating or preventing the recurrence of any unauthorized possession, use or knowledge, or attempt thereof, of the RevTech Confidential Information, cooperate fully with RevTech (at RevTech's expense) in any litigation against third parties deemed necessary by RevTech to protect its proprietary rights and promptly use all reasonable efforts to prevent a recurrence of any such unauthorized possession, use, knowledge or attempt thereof of the RevTech Confidential Information.

## Voss Breaches the License Agreement

76.     In or about April, 2007, Voss provided Revtech with a notification that it was purchasing two UV screen printers and intended to use a different UV ink for production of its products beginning in September, 2007.  Voss also informed Revtech that it requested other UV ink suppliers to decorate UV bottles which would be provided to them by Voss.

77.     The machines purchased are screen-printing machines which utilize most of the "Know-How" set forth above.  The machines are designed to use UV ink and will use another company's UV ink.  Moreover, the process to be utilized with the new machines will include a pre-treatment which is based on the pre-treatment concept explained above and utilizes much of the information set forth above.

78.     Moreover, as hereinabove alleged, in June 2007, Voss shared a confidential communication received from RevTech with Kammann.

### RevTech Sends Notice of Termination of the Licence Agreement to Voss

79.     By letter dated July 5, 2007, RevTech sent written notice to Voss notifying Voss that it was in breach of specific provisions in the License Agreement including, but not limited to, sections 2.02(b), 2.02(f), 2.02(h), 2.02(i), 2.03, 2.04. 8.01(c) and 11.01 therein, and terminated the License Agreement effective July 25, 2007.

80.     Voss failed and refused to remedy and/or cure the breaches within twenty days of receipt of notice of the breaches.

81.     Voss has also breached the License Agreement because it has not complied with section 6.02 therein.

82.     Accordingly, the License Agreement terminated as of July 25, 2007.

24

## COUNTERCLAIM ONE
### (Permanent Injunction Based on
### Termination of License Agreement)

83.    Repeats and realleges each and every allegation set forth in paragraphs 47

through 82 with the same force and effect as though fully set forth herein.

84.    Paragraph 10.11 of the License Agreement provides, in relevant part, as

follows:

> Effect of Expiration/Termination.  (a) Upon the expiration or
> earlier termination of the Technology License Term, Customer
> shall (i) immediately cease all use of (A) the Licensed Process, the
> Licensed Patent Rights, the Licensed Know-How and the Ink and
> (B) the Machines until such time as RevTech or its designees refit
> the Machines so that they do not perform the Licensed Process or
> use the Licensed Patent Rights, the Licensed Know-How or the Ink
> or otherwise manufacture the Licensed Products and allow
> RevTech or its designee immediate access to the Machine(s) for
> such refitting; (ii) immediately return all materials incorporating
> the Licensed Patent Rights, Licensed Know-How, the Licensed
> Marks and any other intellectual property rights of RevTech or its
> Affiliates or RevTech Confidential Information to RevTech,
> without retaining any copies thereof; (iii) provide RevTech with
> the option to acquire each of the Customers' lamp systems that
> were used in connection with the Licensed Process at the
> Customers' net book value; and (iv) cease all use of the Licensed
> Marks.

85.    Notwithstanding the proper termination of the License Agreement

effective July 25, 2007, Voss and its affiliates are (i) continuing to use (A) the Licensed Process,

the Licensed Patent Rights, the Licensed Know-How and the Ink and (B) the Machines, (ii) have

refused to grant access to RevTech or its designees to refit the Machines so that they do not

perform the Licensed Process or use the Licensed Patent Rights, the Licensed Know-How or the

Ink or otherwise manufacture the Licensed Products; (iii) have failed to return all materials

incorporating the Licensed Patent Rights, Licensed Know-How, the Licensed Marks and any

other intellectual property rights of RevTech or its Affiliates or RevTech Confidential

Information to RevTech, without retaining any copies thereof; (iv) have failed to provide

RevTech with the option to acquire each Voss' lamp systems that were used in connection with

the Licensed Process at the Voss' net book value; and (iv) have failed to cease all use of the

Licensed Marks.

86.    Based on the foregoing, Voss and the Voss Affiliates should be

permanently restrained and enjoined from (i) using in any way, manner or form the Know-How,

Licensed Marks, Licensed Patent Rights, Licensed Products, the Ink and/or Licensed Process as

defined in the License Agreement between the parties dated December 17, 1999; (ii) selling or

distributing any Voss products decorated while using the Know-How, Licensed Marks, Licensed

Patent Rights, Licensed Products, the Ink and/or Licensed Process; and (iii) purchasing any

machines that are, were or will be retrofitted to perform and/or purchased to perform the

Licensed Process including, but not limited to, machines from Kammann.

87.    Plaintiff has no adequate remedy at law.

### COUNTERCLAIM TWO
### (Damages for Breach of Contact)

88.    Repeats and realleges each and every allegation set forth in paragraphs 47

through 87 with the same force and effect as though fully set forth herein.

89.    Notwithstanding the proper termination of the License Agreement

effective July 25, 2007, Voss and its Affiliates have failed to "return all materials incorporating

the Licensed Patent Rights, Licensed Know-How, the Licensed Marks and any other intellectual

property rights of RevTech or its Affiliates."

26

90.    Included within the materials that should have been returned to RevTech are all decorated glass water containers (filled or unfilled) that existed at the time of the termination of the License Agreement and those that were decorated after July 25, 2007.

91.    Instead of returning all materials incorporating the Licensed Patent Rights, Licensed Know-How, the Licensed Marks and any other intellectual property rights of RevTech or its Affiliates, Voss and the Voss Affiliates have continued to sell the materials and keep the proceeds of sale for themselves.

92.    Upon information and belief, sales of Voss products incorporating the Licensed Patent Rights, Licensed Know-How, the Licensed Marks and any other intellectual property rights of RevTech or its Affiliates equal or are greater than $4,000,000 per month.

93.    Moreover, RevTech has been damaged in additional amounts to be proven at trial due to Voss breach of the License Agreement because, *inter alia*, when Voss disclosed the contents of RevTech's confidential communication to Voss to Kammann, Kammann ceased communicating with RevTech and has refused to do any business with RevTech. Moreover, RevTech has been, and will continue to be, damaged in additional amounts to be determined by the Court due Voss' continued use of RevTech's technology and Know How notwithstanding RevTech's proper and timely termination of the License Agreement.

94.    By reason of the foregoing, as of the date of this Complaint, RevTech has been damaged in an amount to be determined by the court but not less than $10,000,000.

27

## COUNTERCLAIM THREE
### (Unjust Enrichment)

95.     Repeats and realleges each and every allegation set forth in paragraphs 47 through 94 with the same force and effect as though fully set forth herein.

96.     In failing to return all materials incorporating the Licensed Patent Rights, Licensed Know-How, the Licensed Marks and any other intellectual property rights of RevTech or its Affiliates to RevTech, selling the materials and keeping the proceeds of sale for themselves, Voss and the Voss Affiliates have been unjustly enriched.

97.     By reason of the foregoing, as of the date of this Complaint, RevTech has been damaged in an amount to be determined by the court but not less than $10,000,000.

## COUNTERCLAIM FOUR
### (Conversion)

98.     Repeats and realleges each and every allegation set forth in paragraphs 47 through 97 with the same force and effect as though fully set forth herein.

99.     In failing to return all materials incorporating the Licensed Patent Rights, Licensed Know-How, the Licensed Marks and any other intellectual property rights of RevTech or its Affiliates to RevTech, selling the materials and keeping the proceeds of sale for themselves, Voss and the Voss Affiliates have converted property belonging to RevTech for their own use.

100.    By reason of the foregoing, as of the date of this Complaint, RevTech has been damaged in an amount to be determined by the court but not less than $10,000,000.

## COUNTERCLAIM FIVE
### (Patent Infringement)

101.   Repeats and realleges each and every allegation set forth in paragraphs 47 through 100 with the same force and effect as though fully set forth herein.

102.   The Decorating Glass Patent and the Curing Patent are valid and enforceable.

103.   By virtue of its exclusive rights in and to the Decorating Glass Patent and the Curing Patent, RevTech has and continues to maintain the right to sue thereon and right to recover for infringement thereon.

104.   Effective July 25, 2007, Voss and its Affiliates no longer had any rights to use the Decorating Glass Patent or the Curing Patent.

105.   Upon information and belief, Voss and the Voss Affiliates have infringed, induced infringement of, and contributorily infringed the Decorating Glass Patent and/or the Curing Patent, and are still doing so by making, using, selling and/or offering for sale its Voss products.

106.   Upon information and belief, Voss and the Voss Affiliates' also contribute to and/or induce infringement of the Decorating Glass Patent and/or the Curing Patent.

107.   Upon information and belief, Voss' and the Voss Affiliates' infringement is and continues to be willful and deliberate.

108.   Upon information and belief, the Voss Product Distributors are in the possession of, receiving deliveries of, selling and offering for sale, Voss products that have been manufactured, distributed and/or sold in violation of the Decorating Glass Patent and/or the Curing Patent.

109.    As a direct and proximate consequence of the acts and practices of Voss, the Voss Affiliates and the Voss Product Distributors, the Plaintiffs and the Additional Counterclaim Defendants have caused, are causing and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to RevTech for which there is no adequate remedy at law, and for which RevTech is entitled to injunctive relief.

110.    As a result of the Plaintiffs' and Additional Counterclaim Defendants' infringement of the Decorating Glass Patent and/or the Curing Patent, RevTech has suffered and will suffer damages.

111.    RevTech is entitled to recover from Plaintiffs and the Additional Counterclaim Defendants the damages sustained by it as a result of their wrongful acts in an amount subject to proof at trial.

112.    Unless the Plaintiffs and the Additional Counterclaim Defendants are enjoined from their continuing infringement of the Decorating Glass Patent and the Curing Patent, RevTech will suffer additional irreparable harm and impairment of the value of its patent rights. Thus, RevTech is entitled to an injunction against further infringement.

## COUNTERCLAIM SIX
### (Federal Trademark Infringement)

113.    Repeats and realleges each and every allegation set forth in paragraphs 47 through 112 with the same force and effect as though fully set forth herein.

114.    The Mark is valid and enforceable.

115.    By virtue of its exclusive rights in and to the Mark, RevTech has and continues to maintain the right to sue thereon and right to obtain relief for infringement thereon.

116.    Effective July 25, 2007, Voss and its Affiliates no longer had any rights to use the Mark.

117.    Pursuant to the License Agreement, upon its termination, Plaintiffs "shall … (iv) cease all use of the Licensed Marks."

118.    Without RevTech's authorization or consent, and having knowledge of RevTech's prior rights in and to the Mark, and knowing that Plaintiffs' products contain the Mark in its packaging, Plaintiffs and the Additional Counterclaim Defendants have manufactured, distributed, offered for sale and/or sold Voss products bearing the Mark including, but not limited to distributions and/or sales to the consuming public.

119.    The post-termination use by Plaintiffs and the Additional Counterclaim Defendants of the Mark is likely to cause and is causing confusion, mistake and deception among the general public as to Plaintiffs' and the Additional Counterclaim Defendants' authority to use the Mark on the Voss products, containers and/or packaging, and is likely to deceive the public into believing that the Voss products being sold are authorized by RevTech, all to the damage and detriment of RevTech's reputation and goodwill.

120.    As a direct and proximate consequence of the acts and practices of Plaintiffs and the Additional Counterclaim Defendants, the Plaintiffs and the Additional Counterclaim Defendants have caused, are causing and unless such acts and practices are enjoined by the Court, will continue to cause irreparable harm to RevTech for which there is no adequate remedy at law, and for which RevTech is entitled to injunctive relief.

121.    As a result of the Plaintiffs' and Additional Counterclaim Defendants' infringement of the Mark, RevTech has suffered and will suffer damages.

122.    RevTech is entitled to recover from Plaintiffs and the Additional Counterclaim Defendants the damages sustained by it as a result of their wrongful acts in an amount subject to proof at trial.

123.    Unless the Plaintiffs and the Additional Counterclaim Defendants are enjoined from their continuing infringement of the Mark, RevTech will suffer additional irreparable harm and impairment of the value of its trademark rights.  Thus, RevTech is entitled to an injunction against further infringement.

WHEREFORE, RevTech demands that a judgment be entered against the plaintiff as follows:

(a)    Dismissing the Complaint;

(b)    On its First Counterclaim, an order permanently restraining and enjoining Plaintiff from (i) using in any way, manner or form the Know-How, Licensed Marks, Licensed Patent Rights, Licensed Products, the Ink and/or Licensed Process as defined in the License Agreement between the parties dated December 17, 1999; (ii) selling or distributing any Voss products decorated while using the Know-How, Licensed Marks, Licensed Patent Rights, Licensed Products, the Ink and/or Licensed Process; and (iii) purchasing any machines that are, were or will be retrofitted to perform and/or purchased to perform the Licensed Process including, but not limited to, machines from Kammann;

(c)    On its Second Counterclaim, damages in an amount to be determined by the court but not less than $10,000,000;

(d)    On its Third Counterclaim, damages in an amount to be determined by the court but not less than $10,000,000;

      (e)    On its Fourth Counterclaim, damages in an amount to be determined by the court but not less than $10,000,000;

      (f)    On its Fifth Counterclaim:

      i.    An order declaring that Plaintiffs and/or the Additional Counterclaim Defendants have infringed on the Decorating Glass Patent and/or the Curing Patent;

      ii.    An order declaring that the infringement of the Decorating Glass Patent and/or the Curing Patent by the Plaintiffs and/or the Additional Counterclaim Defendants has been willful;

      iii.    That the Plaintiffs and the Additional Counterclaim Defendants be ordered to pay damages adequate to compensate RevTech for their infringement of the Decorating Glass Patent and/or the Curing Patent;

      iv.    That all damages awarded by trebled;

      v.    That the Plaintiffs and the Additional Counterclaim Defendants be ordered to pay RevTech's attorneys fees pursuant to 35 U.S.C. § 285;

      vi.    That the Plaintiffs and the Additional Counterclaim Defendants, together with their respective subsidiaries, affiliates, parents, successors, assigns, officers, agents and employees, and those persons acting in active concert or in participation with them, and their successors and assigns, or any of them, be enjoined from further infringement, contributing to the infringement of, and inducing the infringement of the Decorating Glass Patent and/or the Curing Patent, and specifically from directly or indirectly making, using, selling, or offering for sale, any products or services embodying the inventions of the Decorating Glass Patent and/or the Curing Patent, without the express written authority of Plaintiff;

vii.     That Plaintiffs and the Additional Counterclaim Defendants be ordered to account for all gains, profits, advantages and unjust enrichment derived from their violation of law;

viii.    That Plaintiffs and the Additional Counterclaim Defendants be ordered to deliver to RevTech, for destruction at RevTech's option, all priducts that infringe the Decorating Glass Patent and/or the Curing Patent;

ix.      That the Plaintiffs and the Additional Counterclaim Defendants be ordered to pay prejudgment interest;

(g)      On its Sixth Counterclaim, an order

(i)      enjoining the Plaintiffs and the Additional Counterclaim Defendants during the pendency of this action and, thereafter, permanently, from using in any manner the Mark in connection with the advertising, offering for sale and sale of any Voss products;

(ii)     enjoining the Plaintiffs and the Additional Counterclaim Defendants during the pendency of this action and, thereafter, permanently, from shipping, delivering, distributing or otherwise disposing of, in any manner, products or inventory which bear the Mark;

(iii)    directing Plaintiffs and the Additional Counterclaim Defendants to forthwith deliver to RevTech any and all products, receptacles, advertising matter, labels, promotional and other materials, in the possession custody or control of Plaintiffs and/or the Additional Counterclaim Defendants bearing the Mark;

(iv)   directing the Plaintiffs and the Additional Counterclaim Defendants to deliver to RevTech a complete list of customers and other entities to which they have distributed and/or sold products bearing the Mark;

(v)   directing the Plaintiffs and the Additional Counterclaim Defendants to account for sales and profits realized by them by reason of their unlawful acts herein alleged;

(vi)   entering a money judgment in an amount to be determined by the Court;

(vii)   granting RevTech reasonable attorneys fees; and

(h)   Such other and further relief as to the Court may seem just and proper, together with costs and disbursements of this Action.

Dated:      New York, New York
            September 12, 2007

                              HELLER, HOROWITZ & FEIT, P.C.

                              By: _____
                                   Alan A. Heller (AH-7942)
                                   *Attorneys for Defendant*
                                   292 Madison Avenue
                                   New York, New York 10017
                                   (212) 685-7600

TO:   **KING & SPAULDING, LLP**
      *Attorneys for Plaintiffs*
      1185 Avenue of the Americas
      New York, New York 10036
      (212) 556-2100

**OF COUNSEL:**

John ("Jack") Clifford, Esq.
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN  55402-2215
(612) 332-5300

Luke Anderson, Esq.
MERCHANT & GOULD, P.C.
133 Peachtree Street, N.E.
Suite 4900
Atlanta, Georgia  30303-1821
(404) 954-5100