Keith E. Sharkin (KS-1307)
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2100
Attorneys for Plaintiffs



IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VOSS OF NORWAY, ASA;<br>VOSS PRODUCTIONS, AS;<br>VOSS USA, INC.;<br>ENERGY GROUP, AS; and<br>G ENERGY, INC.<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>REVTECH, INC.<br><br>　　　　　Defendant. | Civil Action No. 07-CV-7649 (LLS) |

### FIRST AMENDED DECLARATORY JUDGMENT COMPLAINT

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure VOSS OF NORWAY ASA and its affiliate companies VOSS PRODUCTION AS; VOSS USA, INC.; ENERGY GROUP AS; and, G ENERGY, INC. (collectively "Voss"), by and through its attorneys, hereby file this First Amended Declaratory Judgment Complaint. Voss brings this action pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §2201 for a declaratory judgment that Voss did not breach the parties License Agreement and Ink Purchasing Agreement ("the Agreements") and that the patents asserted by Defendant in its Counterclaim to the original Complaint are not infringed, unenforceable, and invalid.

1

## **Nature of this Action**

1. Voss contracted for use of Defendant's patented technology relating to UV curable ink, which is Voss' <u>sole</u> method of labeling its distinctive bottles. The Agreements at issue in this action were entered into on December 17, 1999 and were set to expire on December 31, 2007.

2. In early 2006, more than a year before the scheduled expiration of the Agreements, Voss started the planning of an expansion and upgrade of its production facilities. Such expansion would include new state-of-the-art bottle labeling equipment to replace Voss' current equipment. As part of this process, Voss began evaluating new bottle labeling solutions in order to make an informed decision to either renew its Agreements with Defendant for an additional term and thereby continue using Defendant's technology or utilize different technology from a new supplier. Defendant was fully informed of Voss' plans to evaluate competing technologies and took part in the evaluation process as one of several competing suppliers.

3. However, Defendant's conduct changed dramatically several months into the process. In mid April 2007, Defendant learned that Voss intended to purchase decorating machines from a new supplier, not from its existing supplier. Upon information and belief, Defendant interpreted Voss' decision as reducing its chances to become the decoration technology supplier on the new machines because it lacked a well established relationship with new supplier Kammann. At that point Defendant embarked on a calculated endeavor to keep Voss' business at all costs. Defendant has taken the position that under the terms of the Agreements it has the exclusive

perpetual right to provide Voss with UV curable ink technology and if Voss decides not to use Defendant's technology, then it can not use anyone else's UV curable ink technology. Defendant has, incredibly, recognized that Voss may purchase its bottles pre-decorated from its bottle supplier, even if the bottle supplier uses the very same new machine and solution that Voss plans to install in-house. Defendant's interpretation is not supported by the Agreements and threatens the business and livelihood of Voss.

4. Defendant sent Voss a purported "Notice of Termination" of the Agreements on July 5, 2007.

5. The Agreements do NOT provide for automatic termination for a material breach. Instead, the Agreements have a notice and cure provision under which the party allegedly in breach of the Agreements is given notice of the alleged breach, and if the breach is cured within 20-days then there is no termination.

6. Voss responded fully, appropriately and timely to each and every allegation in the notice sent by Defendant in order to prevent termination. Despite Voss' response, Defendant, without any legal cause, purported to terminate the Agreements on July 25, 2007.

7. Since the purported termination, Defendant has demanded that Voss cease using the only technology it currently has available for labeling its bottles and deliver to Defendant all of its inventory, and Defendant even has demanded all undecorated bottles be delivered to it.

8. An actual case and controversy exists because Voss disputes that it has breached the Agreements and that termination is proper or has occurred.

## Parties, Jurisdiction, and Venue

9. Plaintiff Voss of Norway ASA is a Norwegian corporation with its principal place of business located at Drammensveien 123, N-0277 Oslo, Norway.

10. Plaintiff Voss Production AS is a Norwegian company with its principal place of business located at Drammensveien 123, N-0277 Oslo, Norway.

11. Plaintiff Voss USA, Inc. is a Delaware corporation with its principal place of business located at 900 Broadway, Suite 1003, New York, New York 10003.

12. Plaintiff Energy Group AS is a Norwegian company with its principal place of business located at Drammensveien 123, N-0277 Oslo, Norway.

13. G Energy, Inc. is a New York corporation with its principal place of business located at 900 Broadway, Suite 1003, New York, New York 10003.

14. Upon information and belief, Defendant RevTech, Inc. is a Delaware corporation with a principal place of business located at 2147 State Route 27, Dock A, Edison, New Jersey 08818, USA.

15. This Court has personal jurisdiction over Defendant. Defendant, pursuant to Article 12.12 of the License Agreement, has consented and agreed to the exclusive jurisdiction of the courts located in the City of New York, New York, USA. Moreover, should it be necessary, this Court has personal jurisdiction over Defendant based upon New York's Long Arm statute.

16. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332 since there is full diversity and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and under 28 U.S.C. §1331.

17. Venue is proper in this district pursuant to Article 12.12(ii) of the License Agreement which provides in relevant part: "The parties consent and agree to the exclusive jurisdiction of, and each party hereto shall only commence an action or suit against the other party hereto or its Affiliates in, the state and federal courts located in the City of New York, New York, USA for the resolution of any dispute arising hereunder."

### Factual Background

18. VOSS is internationally recognized as a premier leader in the highly competitive, high end bottled water market. VOSS water comes from an artesian aquifer in Southern Norway. The water coming from this artesian aquifer is recognized worldwide for its unmatched purity.

19. Voss utilizes unique packaging for its bottled water. For example VOSS bottles have a distinct elongated appearance, which is the subject of numerous trademark registrations in the US and elsewhere.

20. Voss' glass bottles are currently labeled using an ultra violet ("UV") curable ink applied to the glass. Defendant's UV technology is currently Voss' sole source for bottle labeling on its glass bottled products, the majority of its products.

### The Agreements

21. Voss and Defendant entered into a License Agreement on December 17, 1999, that granted Voss rights to use Defendant's patented technology, know-how, and its trademark. Defendant's patented technology utilizes a proprietary UV curable ink that is removable with an alkali bath solution so the bottles can be reused or redecorated. Voss and Defendant also entered an Ink Purchasing Agreement on

December 17, 1999, that required Defendant to sell, and Voss to buy, its UV curable removable ink from Defendant. As set forth in the Agreements, Voss obtained a bottle decorating machine know as an "RS 150" model machine made by Rosario. The machine was fitted according to Defendant's to decorate Voss' bottles with the removable ink sold by the Defendant.

22.     The initial term of the Agreements extended until June 30, 2004. Prior to the 2004 expiration date, however, the parties agreed to extend the term of the Agreements until December 31, 2007.

23.     In 2006, as part of a major expansion of its bottling abilities, and also anticipating the need to either renew its Agreements with Defendant or transition to a new technology, Voss started evaluating new and different bottle labeling solutions in order to learn what new technologies were available and reach an informed decision.

24.     Defendant was fully aware of Voss' efforts, and took part in these competing as one of several alternative suppliers of decoration technology and ink. Voss and Defendant meet in-person in New York City in September 2006 to allow Defendant to present its proposed solutions. At no time did Defendant bring up that Voss' potential choice of competing solutions was in any way impeded by provisions of the Agreement. Defendant's conduct, however, changed dramatically when Defendant learned in April 2007 that Voss had selected a new machine vendor, namely Kammann, as its new printing machine supplier. Upon information and belief, this led Defendant to believe that its chances of becoming the supplier of Voss' new bottle decoration solution had been reduced. On April 12, 2007, after having learned

about Voss' decision to use Kammann as its machine supplier, Defendant for the first time makes a reference to **"legal issues relating to using the other products"**.

25.   Kammann supplies ink decoration machines, which can be adapted to work with most available decorating solutions. Kammann itself does not offer its own decorating solutions. Having chosen Kammann, Voss had the potential suppliers of decoration solutions, including Defendant, run tests on Kammann equipment. Having seen the result of such tests, including the result of Defendant's solution being used on a Kammann machine, Voss elected Marabu as its supplier of decorating solution. The solution offered by Marabu is a technique for the decoration of glass bottles using UV curable ink which is materially different from Defendant's technology. In particular, while Defendant's technology creates a product with removable ink, Marabu's technology has permanent ink. Kammann and Marabu will train Voss how to use the Marabu decoration solution on the new Kammann machine and the two suppliers' staff will do this without any access to any machine, process, know how or other information Voss received from Defendant. The new Kammann machine will be installed in a different building apart from the current RS 150 and the equipment installed by the Defendant or using any know how obtained from the Defendant. At no time has Voss disclosed anything about the Defendant's technology or know how to Kammann or anyone else outside of Voss employees with a need to know such information.

26.   Spacio AS (the Norwegian branch of Marabu) has advised Voss that its technology does not violate the intellectual property of any third party, including Defendant's.

27.     Shortly after Voss informed Defendant on June 29, 2007, of its decision to use Marabu as to supply a decoration solution to be used in connection with the Kammann machines, Defendant repeatedly accused Voss of breaching the Agreements by having decided to purchase its new decorating equipment with UV curing capability.

### Alleged Breach, Notice of Termination, and Termination

28.     The Agreements do NOT provide for automatic termination for a material breach. Instead, the Agreements have a notice and cure provision under which the party allegedly in breach of the agreement is given notice of the breach, and if the breach is cured within 20-days then there is no termination. Article 10.03 of the License Agreement provides in relevant part:

> If a party is in breach, the non-breaching party shall give the breaching party written notice specifying the nature of the breach. The breaching party, within twenty (20) days of receipt of such notice, shall remedy the breach specified therein and provide evidence of such remedy, including, without limitation, a certification from the Responsible Officer of the breaching party, within such twenty (20) day period or, if the breaching party fails to remedy such breach in full, the non-breaching party may terminate the Term of this Agreement without further notice, <u>provided</u> that if such breach is curable but cannot, with the exercise of the breaching party's best efforts, be cured within such twenty (20) period, the breaching party shall notify the non-breaching party thereof in writing, including, without limitation, a specific action plan and timetable for curing such breach, within such twenty (20) day period, and <u>provided</u> <u>further</u> that the breaching party exercises best efforts to cure such breach, such breach will not constitute grounds for termination of the term of this Agreement so long as it is cured within sixty (60) days of such notice of breach from the non-breaching party.

29.     On July 5, 2007, almost a year after Voss began comparing new systems, including the system offered by the Defendant for labeling its products with its existing system and only after it became clear to Defendant that Voss would not be

8

renewing its Agreements past the December 31, 2007 expiration date, Defendant sent a purported Termination Notice. The Notice states in relevant part that:

> Voss has provided RevTech with written notification that Voss will begin to use ultra-violet (UV) ink provided by another company on new equipment purchased from Kammann Machines which will be installed in September. We have further been informed that Kammann has been conducting tests with a variety of UV inks on behalf of Voss. In addition, Revtech received very negative communication from Kammann Machines due to a conversation that occurred with Mr. Stian Eilbert during which Confidential Information was disclosed to Kammann. This has had a significant negative impact on Revtech which has been making recent overtures in an attempt to create a stronger relationship with Kammann which is critical to Revtech's future strategy. This objective was being very successfully accomplished until Mr. Eilberts conversation. Documentation exists that clearly prove all the above actions.
>
> The above actions are in clear material breach of Articles 2.02(b), (f), (h) and (i); 2.03, 2.04, 8.01(c) and Article 11.01 of the License Agreement. Among many other violations, it would be impossible for Voss to decorate glass containers without utilizing Know-How as described in the Agreement.

30. The following day, on July 6, 2007, Defendant sent another letter in which it reveals its true intention to use the threat of termination to prevent Voss from using any other suppliers' technology and thereby force Voss to continue doing business with Defendant. Defendant states that it "wants to make clear that [Voss'] negotiation for or purchase of any decorating equipment with UV capability is clear indication of intent to continue Breach of the Agreements." Defendant's July 6, 2007 letter is incorporated by reference.

31. Voss responded on July 18, 2007, by providing a point-by-point response under the specific Articles of the License Agreement to each of Defendant's alleged breaches, thereby fully demonstrating that no grounds for termination exists. In particular, the Agreements do not provide that Voss cannot use another technology or

vendor for its products in the future. Moreover, Voss responded to Defendant's flawed logic:

> In the Termination Letter, it is claimed that "it would be impossible for Voss to decorate glass containers without utilizing Know-How as described in the Agreement." We assume that this only refers to decoration by use of ink, not by use of altogether different technologies, for example by way of plastic sticker or otherwise. The License Agreement is a fixed term agreement which expires on 31 December 2007. We are unaware of any provision in the License Agreement which precludes that Voss (before or) after such expiration date decorates glass bottles using technology or ink independently developed by any third party, provided that such decoration is not performed on the RevTech retrofitted Rosario Machine. The effect of such claim as referred above seems to be that Voss should it wish to continue selling products in decorated glass bottles (before or) after the expiration date, for perpetuity would be contractually committed to do so using only RevTech ink and technology. This is an understanding of the License Agreement which we do not share.
>
> We would also like to point out that Voss' know-how about any ink and related technology or hardware is limited to the use of such products as instructed by the relevant supplier. Voss' know-how about products supplied by RevTech consists of no more than how to refill ink and fizz kits, how to operate the retro-fitted Rosario printer and how to perform basic adjustments and repairs on such machine.
>
> As stated above, we reject that any act of Voss related to the sourcing of additional decoration equipment and thereto related technology constitutes a breach of the terms of the License Agreement as described in the Termination Letter, Voss intends to continue its use of RevTech ink and technology within the terms of the License Agreement until its expiration. We expect that ink already paid for will be delivered as intended, and we expect any further orders for same to be fulfilled on a timely and orderly basis.

32. Then by letter dated August 3, 2007, without even acknowledging any of the issues related to the alleged breach addressed by Voss, counsel for Defendant informed Voss that "since Voss has failed to timely cure its default under the License Agreement, the License Agreement has been terminated effective July 25, 2007. In light of the fact [that] Voss no longer has any rights with respect to the Licensed

10

Process, the Licensed Patent Rights, the Licensed Know-How, the Licensed Marks and/or the Ink (all defined in the License Agreement), demand is hereby made as follows: 1. That Voss immediately cease and desist from any use of the Licensed Process, the Licensed Patent Rights, the Licensed Know-How and the Ink on any of its products. 2. That Voss immediately cease and desist from any use of the Machines . . . . . ."

33. Voss did not reveal any of Defendant's Confidential Information to Kammann, did not make any disparaging or unflattering comments about Defendant to Kammann, and is not responsible for any revelation of Confidential Information to Kammann by Defendant during Defendant's direct negotiation with Kammann.

34. The Agreements do not provide that Voss' contracting to use a different bottle lableling technology and ink supplier is a breach of the agreement.

35. The Agreements do not provide for early termination in the event of non-renewal of the Agreements.

36. The Agreements do not provide that they are perpetual and must be renewed.

37. The Agreements are effective through December 31, 2007, at the earliest.

38. The Defendant's licensed process, licensed patent rights, licensed know how and licensed ink does not cover the Kammann's machines or Marabu products, process, know-how, or new ink.

## First Cause of Action
### (Declaration of VOSS' Contractual Rights)

39. The allegations in Paragraphs 1 through 38 are incorporated by reference.

40. A case of actual controversy exists between Voss and Defendant. Defendant has asserted the Agreements terminated as of July 25, 2007.

41. Voss has fully performed all of its duties and obligations under the Agreements.

42. Voss has not materially breached the Agreements.

43. Voss denies Defendant's allegation that it breached the Agreements.

44. Voss seeks a declaration of its rights under the Agreements along with a determination that the Agreements were not breached and were not properly terminated.

45. Voss seeks a declaration that the Defendant's licensed process, licensed patent rights, licensed know how and licensed ink does not cover the Kammann machines or Marabu products, process, know-how, or new ink.

## Second Cause of Action
### (Declaration of Patent Noninfringement)

47. The allegations in Paragraphs 1 through 46 are incorporated by reference.

48. Defendant has accused Voss of infringing United States Patent No. 6,093,455 (the " '455 Patent") and United States Patent No. 6,136,382 (the "'382 Patent").

49. Voss denies that it infringes the '455 Patent" and the '382 Patent.

50. Accordingly, Voss seeks a declaration of noninfringement and uneforcablity of the '455 Patent and the '382 Patent.

12

## Third Cause of Action
### (Declaration of Patent Invalidity)

51. The allegations in Paragraphs 1 through 50 are incorporated by reference.

52. Voss also alleges that the '455 and '382 patents are invalid for failing to comply with the statutory requirements of Sections 102, 103, and 112 of Title 35 of the United States Code.

## Prayer For Relief

**WHEREFORE**, Voss prays for:

1. A judgment that Voss has not breached the License Agreement and the Ink Purchase Agreement;

2. A judgment that the License Agreement and Ink Purchase Agreement are valid, subsisting, and not terminated;

3. A judgment that the Defendant's licensed process, licensed patent rights, licensed know how and licensed ink does not cover the Kammann machines or Marabu products, process, know-how, or new ink;

4. Its costs and disbursements herein;

5. A judgment declaring that Voss does not infringe the '455 Patent and the '382 Patent;

6. A judgment declaring the '455 Patent and the '382 Patent invalid and unenforceable;

7. An order declaring this an exceptional case and awarding Voss its attorneys fees and costs; and,

8. Such other and further relief as this Court deems necessary and just.

**Demand for Jury Trial**

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff Voss hereby demands a trial by jury on all issues so triable as a matter of right.

**KING & SPALDING LLP**

_____
Keith E. Sharkin (KS-1307)

1185 Avenue of the Americas
New York, NY 10036-4003
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Email: ksharkin@kslaw.com

*Counsel for Plaintiffs Voss of Norway ASA Voss Production AS, Energy Group AS, Voss USA, Inc. and G Energy, Inc.*

**OF COUNSEL:**
John ("Jack") Clifford
MN Bar No. 134,181
**Merchant & Gould P.C.**
3200 IDS Center, 80 South 8th Street
Minneapolis, MN 55402-2215
Telephone: 612-332-5300
Facsimile: 612-332-9081
Email: Jclifford@merchantgould.com

-and-

Luke Anderson
GA Bar No. 018830
**Merchant & Gould P.C.**
133 Peachtree Street, N.E., Suite 4900
Atlanta, Georgia 30303-1821
Telephone: 404-954-5100
Facsimile: 404-954-5099
Email: Landerson@merchantgould.com

*Counsel for Plaintiffs Voss of Norway ASA Voss Production AS, Energy Group AS, Voss USA, Inc. and G Energy, Inc.*

## CERTIFICATE OF SERVICE

I, Keith E. Sharkin, hereby certify that on this 25th day of October, 2007, a true copy of the foregoing First Amended Declaratory Judgment Complaint was served upon the following counsel of record by First Class mail:

>Alan A. Heller, Esq.
>Heller, Horowitz & Feit, P.C.
>292 Madison Avenue
>New York, NY 10017

Dated: New York, New York
October 25, 2007

_____
Keith E. Sharkin